UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CHANA R. PITTMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 1:14-cv-00130-SEB-MJD |
| ) | |
| CAROLYN W. COLVIN Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Chana Pittman ("Pittman") requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Social Security Disability Insurance Benefits ("DIB") under Title II and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("SSA"). See 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3). For the reasons set forth below, the Magistrate Judge recommends that the District Judge **AFFIRM** the decision of the Commissioner.

## I. Procedural History

Pittman filed her application for DIB on June 9, 2011 and for SSI on June 15, 2011, alleging an onset of disability as of May 15, 2008.[1] Pittman's application was denied initially on October 3, 2011 and denied on reconsideration on February 10, 2012. Pittman timely requested a hearing, which was held before Administrative Law Judge Albert J. Velasquez ("ALJ") on

---

[1] Although Pittman alleges a disability onset date of May 15, 2008 for her present DIB and SSI applications, she previously applied for DIB and SSI in October 29, 2009, the denial of which application was affirmed by the Administrative Law Judge (ALJ) on May 13, 2011 and by this Court on September 20, 2013. [R. at 12; Cause No. 1:12-cv-01128-DKL-WTL, Dkt. 25.] Accordingly, the issue of Pittman's disability prior to May 13, 2011, the date of the first ALJ's denial, is *res judicata*, and only the disability period of May 14, 2011 through December 31, 2013, Pittman's date last insured, is at issue. [R. at 11-12.]

1

January 10, 2013. The ALJ's March 1, 2013 decision also denied Pittman's application for DIB and SSI, and on November 27, 2013 the Appeals Council denied Pittman's request for review, making the ALJ's decision the final decision for purposes of judicial review. Pittman timely filed her Complaint with this Court on January 29, 2014, and the matter is now fully briefed and before the Court.

## II. Factual Background

Pittman, now thirty-eight years old, applied for SSI and DIB due to her diabetes, lower back pain, obstructive sleep apnea, obesity, bipolar disorder, depression, anxiety, borderline personality disorder, and history of cocaine and cannabis abuse.[2] [R. at 14.] In order to manage these conditions, Pittman has been prescribed several medications, including Abilify, which is used to treat bipolar disorder and depression; Simvastatin, which is used to treat high cholesterol; Metformin, which is used to treat diabetes; and Spironolactone, which is used to treat high blood pressure. [R. at 81.] In her function report, Pittman reported that she is able to prepare meals, perform house and yard work, run errands as needed, and get along "great" with authority figures "when they are fair," but she also noted having difficulty with lifting, squatting, bending, standing, reaching, walking, stair climbing, completing tasks, concentration, understanding, following instructions, and getting along with others. [R. at 86-90.] However, Pittman's sister, who completed a third party function report, noted that Pittman only has difficulty with lifting, stair climbing, and concentration, adding that she can only lift about 20 pounds. [R. at 99.]

In November of 2009, Pittman had her initial assessment at Aspire Indiana, a non-profit mental health center. [R. at 223.] Although she was diagnosed with Major Depression,

---

[2] Because Pittman only disputes the ALJ's findings regarding her mental impairments, the Court will narrow the scope of this Report and Recommendation accordingly.

2

Recurrent based on her reports of symptoms of depression [R. at 225], Pittman, at her first session, "shared that her lawyer and others have recommended she come as she appears depressed. She does not see herself as depressed" [R. at 222]. At a psychiatric evaluation one month later, Pittman was diagnosed with Cocaine Abuse, Bipolar Disorder, and Cannabis Abuse. [R. at 218.] At her medication review in May of 2011, the nurse practitioner noted that Pittman was "being followed due to Borderline Personality Disorder," and that the current medication regimen was "very good overall," noting that Pittman "feels much less edgy and [is] smiling more." [R. at 187.]

In September of 2011, Dr. Ann Kledzik performed an Adult Mental Status Examination on Pittman at the request of the Disability Determination Bureau of Indiana to aid the bureau in reviewing Pittman's case. [R. at 229.] At the end of the examination, Dr. Kledzik concluded that:

> Claimant is a 35-year-old African American female who is **applying for disability due to several medical concerns and mood symptoms**. She has endorsed symptoms of depressed and irritable mood, hypersomnia, poor energy, decreased appetite, concentration difficulties, anhedonia, and feelings of hopelessness. **She exercises poor judgment when feeling depressed and engages in risky sexual behavior**. Although she endorsed periods of elevated mood, she stated that she is better able to focus during this periods [sic] and is less irritable. She denied risky or dangerous behaviors during periods of elevated mood and denied excessive involvement in pleasurable activities during these times. **She did not endorse any other manic symptoms and does not meet the criteria for bipolar disorder based on her reported history**. Past records have indicated that she has a diagnosis of borderline personality disorder which may account for her impulsivity in self-damaging areas such as promiscuous sex as well as her emotional instability and feelings of intense anger. She endorsed significant anxiety about a variety of topics and reported that she worries excessively and that worries often cause sleep disturbance, irritability, and feelings of restlessness. **Although she endorsed hearing a voice at times, she felt that this was her conscience, and she denied other psychotic symptoms**. There is no history of PTSD, obsessions or compulsions. She endorsed a history of marijuana and cocaine use within the past year. Her insight appears fair as she is able to recognize problematic symptoms and also to understand that her behaviors are often risky. Judgment is impaired based on her history of drug use

3

> and risky sexual behaviors. Her intelligence is estimated to be Average based on fund of knowledge and verbalizations.

[R. at 234.] Based on these observations, Dr. Kledzik diagnosed Pittman with major depressive disorder, recurrent, moderate and generalized anxiety disorder, further stating that Pittman's "symptoms markedly impair her ability to engage in social and family functioning." [R. at 234-35.]

Later that month, State Agency medical consultant Dr. Gange conducted a Mental Residual Functional Capacity Assessment, which took into account all of Pittman's mental health records, including Dr. Kledzik's evaluation. [R. at 237-39.] Acknowledging Dr. Kledzik's comment that Pittman's symptoms "markedly impair her ability to engage in social and family functioning and have interfered with employment in the past," Dr. Gange also noted Pittman's own function report that "her mood is better when she is taking her meds, and when her mood is up she can focus better and remember things." [R. at 239.] Additionally, Pittman reported that she "was suspended from her last employer due to her attitude, and felt the suspension was not justified so she did not return back to work"; there were no health-related allegations regarding her most recent loss of employment. [*Id.*] Dr. Gange concluded that Pittman "appears partially credible" and "retains the ability to perform simple, unskilled tasks on sustained basis with special considerations with [her] ability to socialize with others." [*Id.*] Ultimately, Dr. Gange found Pittman to have moderate difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence, or pace, but no marked difficulties in any category. [R. at 251.]

In July of 2011, Pittman began seeing a new therapist at Aspire. [R. at 278.] Throughout the rest of 2011, Pittman only made it to therapy four times, and the sessions were mostly spent discussing her worry about her elderly grandmother and oldest son who was acting out,

4

eventually calling the police on him. [R. at 272-78.] In February of 2012, Pittman reported that "she is beginning to feel better" and "more positive" at her medication review. [R. at 321.] In July of 2012, Pittman yet again began seeing a new therapist, this time at her home. [R. at 326.] Through the remainder of 2012, Pittman's therapist worked with her to help develop healthy ways to cope with and manage the stress created by her son and other factors. [R. at 326-32.] No comprehensive medical or functionality report was completed based on the updated medical records at Aspire or elsewhere.

At her hearing in January of 2013, both Pittman and a vocational expert (VE) testified. When asked by her lawyer at her hearing if she has auditory hallucinations, Pittman answered "yeah," and when asked if voices talk to her she answered "mm-hmm." [R. at 349.] Pittman also added that she has several panic attacks every week and that she goes on "sex rampages" three or four time a month, less than the several time a week these rampages has occurred in the past. [R. at 350-53.] She further testified that she has three personalities: Chana, the realist; Chranda, the protector; and Queen, the promiscuous one. [R. at 353-55.] When asked what the voices are like, Pittman testified that if Queen wants "to do something sexual," in her mind Pittman might hear a voice saying "no, you really don't want to do that." [R. at 356-57.] Pittman also testified that she has been cut off from friends [R. at 360], her oldest son was just released from Pendleton Juvenile Correctional Facility [R. at 363], and the week prior she pulled a knife on a male friend when they got into a heated debate about her life choices, such as not wanting to talk to him on the phone or see a movie with him [R. at 365-67]. Pittman then testified at length about how her grandmother, who raised her, had become ill, and she went to her grandmother's house every day to take care of her, with the help of her father and her uncle, up until a few months prior to the hearing. [R. at 368-71.]

5

Finally, the VE testified that, pursuant to the ALJ's hypothetical question posed, which reflects Pittman's residual functional capacity (RFC) as determined by the ALJ, she can still perform work as a housekeeper, a night office cleaner, a parking lot cashier, a surveillance systems monitor, a document preparer, and a cutter and paster, but that all of her past relevant work would be precluded. [R. at 382-86.]

### III. Legal Standard

To be eligible for SSI, a claimant must have a disability, pursuant to 42 U.S.C. § 416. Therein, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i). In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis: (1) if the claimant is engaged in substantial gainful activity, she is not disabled; (2) if the claimant does not have a "severe" impairment that significantly limits her ability to perform basic work activities, she is not disabled; (3) if the Commissioner determines that the claimant's impairment meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three and she is able to perform her past relevant work, she is not disabled; and (5) if the claimant can perform certain other available work, she is not disabled. 20 C.F.R. § 404.1520.

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). The standard of substantial evidence is measured by whether "a reasonable mind might accept [the evidence] as

6

adequate to support a conclusion." *Powers v. Apfel*, 207 F.3d 431, 434 (7th Cir. 2000) (quoting *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995)). This court may not reweigh the evidence or substitute its judgment for that of the ALJ, but may only determine whether or not substantial evidence supports the ALJ's conclusion. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted," *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993), but the ALJ must consider "all the relevant evidence," *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision; he must "build an accurate and logical bridge from the evidence to [his] conclusion." *Dixon*, 270 F.3d at 1176.

## IV. The ALJ's Decision

The ALJ first determined that Pittman has not engaged in substantial gainful activity since her alleged onset date of May 15, 2008. [R. at 14.] At step two, the ALJ found that Pittman's diabetes, lower back pain, obstructive sleep apnea, obesity, bipolar disorder, depression, anxiety, borderline personality disorder and history of cocaine and cannabis abuse are severe impairments, as defined by the Act. [*Id.*] However, at step three the ALJ found that Pittman does not have an impairment or combination of impairments that meets or medically equals one of the applicable listed impairments: Listing 1.04 for her back condition, Listing 9.00 for her diabetes, Listing 3.10 for her obstructive sleep apnea, Social Security Ruling 02-01p for her obesity, and Listings 12.04, 12.06, 12.08, and 12.09 for her mental impairments. [R. at 14-16.]

After step three but before step four, the ALJ, after "careful consideration of the entire record," determined that Pittman has the residual functional capacity (RFC) to perform "light

work." [R. at 16.] However, the ALJ found the following limitations to Pittman's ability to perform light work:

> Lifting and carrying 20 pounds occasionally 10 pounds frequently; standing and walking for six (6) of eight (8) hours and sitting for six (6) of eight (8) hours. The work should allow the claimant the opportunity to alternate to a sitting or standing position for 2-3 minutes each hour. The work may require no more than occasional balancing, stooping, crouching, but no kneeling or crawling. Additionally, the claimant should avoid work at unprotected heights, around dangerous moving machinery, operating a motor vehicle or working around open flames or large bodies of water. Finally, the claimant's work must be limited to tasks that are simple and repetitive in nature with no more than superficial interaction with the public, co-workers or supervisors and no production like quotas.

[R. at 16-19.] At step four, the ALJ found that Pittman is unable to perform any of her past relevant work with the aforementioned limitations. [R. at 19.] However, at step five the ALJ found that there are jobs that exist in significant numbers in the national economy that Pittman can perform, including a table with each of the six jobs named by the VE, its skill level, its exertional [sic] level, and the number of jobs existing in both the State of Indiana and throughout the country as a whole. [R. at 20-21.] Based on these findings, the ALJ concluded that Pittman is not disabled, as defined in the Social Security Act. [R. at 21.]

## V. Discussion

Pittman raises four arguments as to why this Court should reverse the decision of the ALJ: (1) substantial evidence does not support the ALJ's decision that Pittman's impairments do not meet or medically equal Listing 12.04, (2) the ALJ's failure to summon a psychologist to testify at the hearing as to whether Pittman's combined impairments medically equal Listing 12.04 necessitates reversal, (3) the ALJ's decision to limit the weight given to the testimony of Pittman in determining her functional limitations contravenes Social Security Ruling 96-7p and is patently erroneous, and (4) substantial evidence does not support the ALJ's RFC finding that

she does not have limitations regarding concentration, persistence, or pace. The Court now examines these issues.

### A. Step Three Evaluation of Listing 12.04

At step three, the ALJ must examine the evidence presented in order to determine whether the claimant's relevant impairment meets or medically equals a Listing. 20 C.F.R. § 404.1520(a)(4)(iii). The requirements of Listing 12.04 are met either when Parts A <u>and</u> B are met or when Part C is met. 20 C.F.R. pt. 404, subpt. P, App. 1. Pittman argues that the ALJ erroneously concluded that she did not meet the Part B criteria, relying on Dr. Kledzik's remark that "[t]he claimant endorsed significant symptoms of depression, anxiety and irritability. Her symptoms markedly impair her ability to engage in social and family functioning and have interfered with employment in the past" as evidence that Pittman has marked impairments in the three categories of activities of daily living, social functioning, and concentration, persistence, or pace, two of which would satisfy the Part B requirements. [Dkt. 16 at 14-16.]

In his decision, the ALJ properly evaluated Pittman's mental impairments under Listing 12.04. When looking to the Part B requirements, the ALJ first determined that Pittman has only a mild restriction in activities of daily living, as she and her sister reported that she is able to groom herself and get dressed without assistance, manage the three-teenager household, cook, clean, do laundry, drive, shop, and pay bills. [R. at 15.] Next, the ALJ found that Pittman has moderate difficulties in social functioning, acknowledging her difficulties in controlling her oldest son, her closeness with her grandmother and sister, and her reports of frequent panic attacks when in public. [R. at 15-16.] Finally, with regard to concentration, persistence, or pace, the ALJ observed Dr. Kledzik's opinion that Pittman functions at an average intellectual level in

spite of her sporadic drug abuse, depression, and anxiety and found that she has moderate difficulties in this category. [R. at 16.]

These findings are entirely consistent with the findings of Dr. Gange, the State Agency psychiatric consultant. Dr. Gange plainly took into account Dr. Kledzik's relevant remarks, as he quoted the passage argued by Pittman in its entirety in his Functional Capacity Assessment. [R. at 239.] However, Dr. Gange also referenced other portions of the record and, after evaluating all of the evidence, concluded that Pittman has mild restriction in activities of daily living, moderate restriction in maintaining social functioning, and moderate restriction in maintaining concentration, persistence, or pace. [R. at 251.] Thus, it is evident that the ALJ properly relied on the opinion of the State Agency medical expert in determining medical equivalency. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004) ("The ALJ may properly rely upon the opinion of these medical experts . . . So, substantial evidence supports a finding that [the claimant] did not meet or equal a listing"). In fact, it is Pittman's own bald assertions that the ALJ "illegally played doctor," that he "failed to meet his duty to develop the record," and that he "erroneously rejected the examining psychiatrist's functional findings" that are contradicted by the evidence of record. [*See* Dkt. 16 at 15-17.] Pursuant to the standard as executed by the Seventh Circuit in *Scheck*, substantial evidence supports a finding that Pittman's mental impairments did not meet or medically equal Listing 12.04.

### B. Failure to Summon a Medical Expert

In determining whether the claimant's impairments medically equal a Listing, "[a]n ALJ may not substitute his own judgment for a physician's opinion without relying on other medical

evidence or authority in the record." *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005). However, although the ALJ has a duty "to develop the claimant's complete medical history," the ALJ does not have a duty "to update objective medical evidence to the time of the hearing." *Luna v. Shalala*, 22 F.3d 687, 693 (7th Cir. 1994) (quotations omitted). Where the medical evidence presented does not indicate the need for an updated medical examination, the ALJ is under no duty to order a consultative examination. *See Howell v. Sullivan*, 950 F.2d 343, 349 (7th Cir. 1991). It is instead "the claimant who bears the responsibility of providing medical evidence of an impairment." *Id.* at 348 (citing 20 C.F.R. § 404.1504, 404.1508).

Social Security Ruling 96-6p dictates that an ALJ is only required to obtain an updated medical expert opinion if one of the following two situations occurs: (1) no additional medical evidence is received, but the ALJ's opinion suggests that a judgment of equivalence may be reasonable or (2) additional medical evidence is received that, in the ALJ's opinion, may change the medical consultant's original finding that the claimant's impairment does not medically equal a Listing. While Pittman summarily claims that the ALJ was duty bound to obtain an updated opinion from a medical advisor, specifically a psychologist, the only citation to the record in this "argument" is the following sentence: "The ALJ cited no evidence regarding medical equivalence to a Listing but also simply assumed (R. 14) that the claimant's combined impairments did not medically equal any Listing." [Dkt. 16 at 20-21.]

This allegation is clearly misguided, however, as, when evaluating whether Pittman's impairments meet or medical equal Listing 12.04 (a question of daily activities, social functioning, and concentration, persistence, or pace, as discussed above), the ALJ cited specifically to Pittman's own function report, the function report submitted by her sister, and the psychological examination and mental status report performed by Dr. Kledzik. [R. at 15-16.]

11

Ironically, it is Pittman who fails to detail *any* additional medical evidence submitted after the fact that might have changed Dr. Gange's finding that she has no marked restrictions under Part B of Listing 12.04.[3] [*See* Dkt. 16 at 20-21.] Accordingly, Pittman has presented no evidence that the ALJ has any reason to believe that Dr. Gauge's opinion remained representative of Pittman's condition, and the ALJ was well within his discretion to proceed without the testimony of a State Agency medical expert at the hearing, pursuant to 96-6p.

### C. Credibility Determination

Pittman additionally argues that the ALJ's credibility determination contravenes Social Security Ruling 96-7p "because the ALJ arbitrarily rejected Dr. Klezdik's psychiatrist's [sic] psychological evaluation which proved the claimant's combined mental impairments met the requirements for Listing 12.04, rendering her totally disabled and fully corroborating her allegations of disability." [Dkt. 16 at 22-24.] Ruling 96-7p discusses an individual's credibility with regard to "the evaluation of symptoms" and defines symptoms as "an individual's own description of his or her physical or mental impairment(s)." S.S.R. 96-7p. A credibility determination will only be overturned if it is "patently wrong" and lacking in specific reasons for the ALJ's credibility finding in question. *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008).

---

[3] The Court observes that it would appear that Pittman's failure to present a proper argument here is due to her attorney's sheer ineptitude. This being her second appeal to the District Court, Mr. Mulvany likewise submitted a brief in support of Pittman's Complaint in her first case. [Cause No. 1:12-cv-01128-DKL-WTL, Dkt. 17.] The body of the argument on this issue in this appeal [Dkt. 16 at 20-21] is **absolutely identical** to the body of the same issue argued in the prior matter [Dkt. 17 at 25-26], save the following changes: (1) the page of the ALJ's medical equivalency determination was changed from 25 to 14, (2) a block quote from *Graves v. Astrue* was added, and, fatally, (3) **the paragraph containing reference to additional medical evidence was removed <u>and not replaced</u>**. In the prior matter, Mr. Mulvany at least wrote: "The opinions of the agency's review [sic] physicians (R. 102-105) could not be reasonably relied on by the ALJ because they were dated 2-3-10 and 4-26-10 and thus did not consider all of the evidence in the record. They did not review the psychological evaluations and treatment from 5-18-10 (R. 405) to 4-13-11 (R. 427)." Here, Mr. Mulvany failed to include any reference to the record to support his claim, which has clearly been copied-and-pasted. As "Judges are not like pigs, hunting for truffles buried in the record," it would be entirely appropriate for the District Judge to consider this "argument" waived. *Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 702 (7th Cir. 2010).

In determining whether Pittman's statements about her mental impairments were supported by objective medical evidence, the ALJ evaluated Dr. Klezdik's medical source statement at length, as well as the State Agency consultant evaluations and the records from Aspire Indiana. [R. at 17-19.] First, the ALJ quoted the very phrase upon which Pittman rests her argument: Dr. Kledzik's note that Pittman's symptoms "**markedly** impair her ability to engage in social and family functioning and have interfered with her employment in the past." [R. at 18 (emphasis added).] The ALJ then acknowledges Pittman's claims of irritability at work, anxiety related to problems controlling her son, and repeated panic attacks, but notes that there is no medical evidence to support those subjective allegations, and there is no medical opinion in Dr. Kledzik's report relating any of these alleged symptoms to an inability to perform any kind of work in the future. [*Id.*]

In looking to the records of her treating physicians at Aspire Indiana, the ALJ noted that in her initial assessment Pittman's strengths included "friendliness," having a "positive attitude," and good "social skills." [*Id.*] The ALJ further notes that there is no follow-up assessment from Aspire regarding Pittman's functional limitations or any other clinical findings to indicate that anything has changed from her initial assessment. [*Id.* at 18-19.] Finally, the ALJ acknowledges Dr. Kledzik's use of the term "markedly," but notes that the GAF score given by Dr. Kledzik, 55, is "firmly within the moderate range." [*Id.* at 19.] The ALJ observes that both State Agency reviewing psychologists "assessed the claimant with moderate limitations in social functioning and concentration, persistence, [or] pace," finding that those assessments are "well supported by the evidence." [*Id.*] Thus, the ALJ gave "the most probative weight to the opinions of the State Agency reviewing psychologists as their assessments are consistent with the claimant's medical evidence of record." [*Id.*] Accordingly, the ALJ so found that "the claimant's statements

concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely credible." [*Id.* at 17.]

The extensive analysis is not an "arbitrary rejection" of Dr. Kledzik's statement, but is a careful evaluation of the exact statement in question as weighed against Pittman's GAF score as determined by Dr. Kledzik, Pittman's treatment records from Aspire Indiana, and the evaluations of the State Agency reviewing psychologists. Thus, the ALJ's credibility determination was not patently erroneous, and it should not be overturned.

### D. RFC Assessment[4]

Pittman's final argument asserts that the ALJ's decision "must be reversed because the ALJ's residual functional capacity [RFC] assessment did not accurately describe the claimant's impairments." [Dkt. 16 at 25.] The only impairment of record detailed by Pittman to support this argument is the assertion that Pittman would have been unable to "perform any substantial gainful activity when she was distracted by unpredictable, frequent auditory hallucinations and delusions." [*Id.*] Although Pittman discussed her three personalities at the hearing –her rational personality, her defensive personality, and her promiscuous personality—the only testimony about voices indicated that, when the promiscuous personality wants to act, in her mind Pittman hears a voice saying "no, you really don't want to do that." [R. at 356-57.] At her mental status evaluation, Pittman told Dr. Kledzik that "this was her conscience, and she denied other psychotic symptoms." [R. at 234.] The Court can find no further evidence of record relevant to

---

[4] Pittman's final argument heading asserts that "substantial evidence fails to support the **ALJ's erroneous Step Step [sic] five determination** that Chana Pittman was not disabled because she could perform some jobs." [Dkt. 16 at 25 (emphasis added).] However, the body of this argument asserts that the ALJ's decision "must be reversed because the ALJ's residual functional capacity [RFC] assessment did not accurately describe the claimant's impairments." [*Id.*] Because the RFC assessment is performed in between steps three and four, the Court will consider this argument to be one of an improper RFC assessment, which indeed affects a step five determination, but not an argument pertaining solely to an erroneous step five determination, as indicated by the heading of the subsection of Pittman's brief.

Pittman's assertion of "frequent auditory hallucinations and delusions," and, as in his second argument, Pittman's attorney has failed to cite to a single page of the record that supports this bald assertion. Although Pittman cites to several Seventh Circuit cases to support her statement that all documented impairments must be considered in an RFC assessment, there is, of course, no requirement that the ALJ take into account an impairment that is not supported by the record. [*See* Dkt. 16 at 25-26 (citing to *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012); *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618-19 (7th Cir. 2010); *Young v. Barnhart*, 362 F.3d 995, 1003-04 (7th Cir. 2004); *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004); *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002).] Accordingly, substantial evidence supports the ALJ's RFC assessment, which does not include any limitation allowing for any auditory hallucinations and other psychotic delusions.

## VI. Conclusion

For the aforementioned reasons, substantial evidence supports the ALJ's determination that Pittman is disabled, pursuant to the Social Security Act, and the Commissioner's decision should therefore be **AFFIRMED**. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Dated: 11/25/2014

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Patrick Harold Mulvany
patrick@mulvanylaw.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov